IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 1:17CR460-1 |
| | : | |
| PAULA KAY BULLOCK | : | |

GOVERNMENT'S SUPPLEMENTAL RESPONSE TO
DEFENDANT'S MOTION TO COMPEL

NOW COMES the United States of America, by and through Matthew G.T. Martin, United States Attorney for the Middle District of North Carolina, and supplements its response to Defendant Bullock's Motion to Compel Discovery and Return Items Seized (D.E. # 30) in light of defendant Bullock's "Reply to Government's Response" (The "Reply") (D.E. # 32) filed on July 30, 2018 as follows:

1. <u>Provision of Government Files</u>

Defendant Bullock complains that the government has failed to provide her with its investigative files in discovery and has only allowed her to inspect portions of the files. Further, Defendant Bullock claims that she has not been allowed to copy or photograph the investigative files and is aware of interviews that have not been provided in discovery. Defendant Bullock goes on to assert

that she is aware of interviews conducted by Durham Police Detective Hall, which have not been turned over in discovery by the government. Without providing any evidence, Defendant Bullock then claims that such interviews contain exculpatory evidence. Finally, Defendant Bullock claims that she has been provided only a "summary" of the evidence in the case.

These claims are misleading at best. First, Defendant Bullock has been provided all of the investigative files in this case both through the USAfx system and on disc. The case files in this case as to the non-drug related counts were uploaded into the USAfx system on January 24, 2018. Further, Defendant Bullock, through counsel, clearly reviewed the evidence uploaded on the USAfx system. Counsel for Defendant Bullock had also reviewed the files at the United States Attorney's office on three occasions including most recently on July 9, 2018.

On January 25, 2018, counsel for Defendant Bullock noted in an email to the United States Attorney's Office that he can "see where your office has uploaded a couple thousands of pages of what appear to be business records …." seized from the offices of Defendant Bullock's business Affordable Animal Care (AAC). Counsel further noted that he could not read all of the scanned documents. SAUSA Gates responded on the same date to address counsel's concern and offered to make the evidence available to counsel to personally

2

inspect and photograph. The next day, counsel indicated that he wanted to put viewing the evidence on hold.

Also on January 25, 2018, SAUSA Gates emailed counsel to inform him that a disc with the case file would be provided with the information that he requested. On February 2, 2018, SAUSA Gates emailed counsel to inform him that three case discs were being mailed to him. SAUSA Gates informed counsel that "The Discs have the full case file and have everything you already have in addition to newly scanned documents (all have been rescanned not just the ones you indicated)…" SAUSA Gates also pointed out that the discs had been reworked by the case agent to be easier to use. Counsel was also informed that the discs replicated the uploaded discovery. A copy of this email is attached hereto as Exhibit A.

On February 2, 2018, AUSA Chut also emailed counsel for Defendant Bullock to memorialize a phone conversation regarding discovery. This email notes that SAUSA Gates was mailing a new discovery disc and offered counsel opportunity to "personally review any grand jury transcripts of fact witnesses."

The government updated the discovery provided after the return by the grand jury of the second superseding indictment on June 26, 2018. (D.E. # 26). The investigation of Defendant Bullock's scheme and artifice to fraudulently obtain hydrocodone and oxycodone was a federal investigation. While Durham Police Detectives were involved in the investigation, United States Postal

3

Inspectors and Special Agents from the United States Department of the Treasury led the investigation. To the extent that Durham investigators were involved in the investigation, their activities were memorialized as part of the federal investigation. All new memorandums of interviews have been uploaded into the USAfx system. They are also incorporated verbatim or almost verbatim into the case summary provided to Defendant Bullock on July 16, 2018.[1]

Further, the government has provided Defendant Bullock with all transcripts of the testimony of grand jury witnesses in this matter. These transcripts have been uploaded to USAfx.

As noted above, counsel for Defendant Bullock has personally examined the government's files on three separate occasions including July 9, 2018. The files provided to counsel for review are the same as uploaded into USAfx and provided on disc to counsel for Defendant Bullock. At no time did counsel for Defendant Bullock indicate following these reviews that he believed that the materials provided for personal inspection differed from those provided in

---

[1] Any discrepancies between the memoranda and the summary are minor, such as attachment numbers varying, as those would differ from the summary—which incorporates numerous summaries from multiple memoranda—and the memoranda which typically only have one or two attachments if any.

4

discovery. Nor did counsel request that documents provided for inspection be copied or photographed.[2]

Defendant Bullock has been provided with the entire investigative file in multiple manners and media. Furthermore, the government has provided the reports of Durham Detective Hall to Defendant Bullock. To the extent that Detective Hall participated in the narcotics investigation, his activities have been memorialized in the discovery provided as to this investigation.

Defendant Bullock's claim that she has not received "DPD materials" since January 2018 strongly suggests that Defendant Bullock has not reviewed the material provided to her. The government has provided Defendant Bullock with memorandum of interviews conducted by Detective Hall. Each of these memoranda bear a United States Treasury heading but clearly indicate that the interviews were conducted by Durham detectives. Attached hereto as Exhibit B is the first page of a memorandum of an interview conducted by Detective Hall of a witness whose initials are B.W.

The government is not aware of any exculpatory materials in Detective Hall's interviews. Mere allegations that the prosecution possesses exculpatory evidence is not sufficient to prove that such evidence would be material to the

---

[2] Counsel was told that he could not photograph or copy the transcripts of grand jury witnesses at that time pursuant to policy. Subsequently, however, these transcripts have now been provided to the defendant in discovery through USAfx.

5

defense.  See, United States v. Jordan, 316 F.3d 1215, 1252, N.1 (11th Cir. 2003).  The government contends that Detective Hall's interviews are incriminating and not exculpatory.  Regardless, Detective Hall's interviews have been turned over in discovery.

Further, Defendant Bullock's claim that she has received only a "summary" of the investigation is very misleading.  First, as noted above, the government has provided its complete files in discovery and for inspection by Defendant Bullock.  Second, the "summary" referred to by Defendant Bullock, which has been provided, is an approximately thirty-one page, single-spaced document, that not only traces the entire course of the investigation, but includes each memorandum of interview verbatim, or almost verbatim, as well as numerous attachments.  This document, if reviewed, allows the defendant to trace the course and substance of the investigation.

From the beginning of this case the government has provided full access to its investigative file including early access to grand jury transcripts. [3]

---

[3] Defendant Bullock's representation that the government has agreed to allow Defendant "access to the DPD files" only after responding to the Motion to Compel is very misleading.  Defendant Bullock has had access to these files from the beginning in multiple manners and media. Further, the offer to review evidence at the Durham Police evidence room is not "access to the DPD" files, but an opportunity to look at physical evidence.  Moreover, the government suggested the facilitation of the defendant viewing evidence without the defendant first asking to do so.  Had defendant simply asked to see the physical evidence, the government would have promptly facilitated that (as

6

Counsel for the government has reached out to counsel for Defendant Bullock to seek clarification as to what specifically Defendant Bullock believes was not turned over in discovery. Defendant Bullock has responded with a list of evidence she believes was not turned over. Counsel for the government is in the process of directing Defendant Bullock where to look for specific items in the discovery provided or informing Defendant Bullock, through counsel, that items requested do not exist. Particularly, as to Detective Hall, counsel for the government has provided a summary of investigative activities conducted in the state investigation as well as pointing out records of Detective Hall's activities in the federal investigation which have already been provided.

2. <u>Controlled Substance Logs</u>

As noted in the government's "Response to Defendant's Motion to Compel Discovery" (D.E. # 31), the Durham Police did not seize any physical copies of controlled substance logs from the offices of AAC. On July 27, 2018, the veterinarian who purchased AAC from Defendant Bullock provided federal agents with copies of the electronic controlled substance log for AAC from 2010 to 2018. The government was not in possession of the log prior to July 27, 2018. Nor was the government aware of the existence of this log until July 27,

---

it facilitated the viewing of evidence on August 1, 2018 when defense counsel made his request on July 27, 2018).

2018. A copy of this electronic log has been provided in discovery to Defendant Bullock through the USAfx system.

The government is not in possession of any other physical copies of controlled substance logs. Witnesses have informed agents that a separate handwritten log did exist and that it may have been removed by Defendant Bullock from AAC. The government has made a demand for reciprocal discovery in this case and, to the extent that Defendant Bullock has possession of the paper controlled substance log, requests that the government be allowed to inspect and copy such log within the parameters of Fed. R. Crim. Pro. 16(b)(1)(A).

3. <u>Computer Evidence</u>

In the reply, Defendant Bullock complains that computer forensic images turned over to the defendant were turned over to him "without notice." However, Defendant Bullock was well aware that the United States Postal Inspection Service (USPIS) was in the process of completing the forensic investigation of the AAC computers and that copies of the forensic images would be provided as soon as possible. Counsel was so informed at the meeting at the United States Attorney's Office on July 9, 2018. The government further notified Defendant Bullock in writing on July 16, 2018, that the forensic examination was progressing and that copies of the forensic images would be provided as soon as the process was complete.

As a courtesy, the government used hard drives in its possession to download the forensic images instead of requiring the defendant to provide such drives. Upon completion of the examination on July 25, 2018, a United States Postal Inspector personally drove the hard drives from the USPIS computer forensic lab in Charlotte to counsel for Defendant Bullock's office in Chapel Hill. There the inspector personally delivered the hard drives to counsel for Defendant Bullock and attempted to explain how to access them.

Defendant Bullock does not explain how further notice was required prior to the personal delivery of the hard drives. In addition, the fact that Defendant Bullock does not like the format of the forensic evidence does not mean that the "format is inadequate." The government provided defendant with hard drives at its own expense containing the forensic images as is normal practice. There is nothing in this "production" that is inadequate or unusual.

It is important to emphasis that no information from the computers seized from AAC has been used in the investigation and preparation of the government's case against Defendant Bullock up to this filing. In light of the new drug charges, the government had the computers imaged out of an abundance of caution, pursuant to its constitutional duty to search for and disclose any favorable evidence. At this time, it is not clear if any relevant evidence is contained on the forensic images. The government transferred the computers to the USPIS forensic lab to enable the computers to be imaged and

9

the images turned over in discovery to allow Defendant Bullock full access to all possibly relevant evidence in the government's possession. These computers were part of Defendant Bullock's previous business. Therefore, Defendant Bullock should have at least some knowledge of what information was contained on the computers.

Defendant Bullock also complains that the government has not provided forensic images of certain computers listed on the Durham Police Evidence voucher including a Dell desktop computer, an external hard drive and two merchant processor point of sale machines. Defendant Bullock has been provided with an image of the Dell computer although this image was misidentified as evidence voucher item 21 instead of item 7. The merchant processor point of sales terminals do not typically contain data and are simply used to transmit credit cards sales data. Therefore, records for the particular credit cards and the merchant processors were obtained through search warrants and subpoenas and have been provided in discovery. The government has recently become aware that the hard drive (voucher #3) defendant requested information from was inadvertently omitted from transfer to the USPIS computer forensic lab with the other computers. It has now been transferred and is being imaged. A copy of the imaged hard drive will be provided to defendant as soon as it is completed.

10

Finally, Defendant Bullock complains that a thumb drive containing data from Defendant Bullock's personal laptop and a cell phone contain incomplete information. First, the government incorrectly denominated the thumb drive as containing data from the laptop and a cell phone. No cell phone was seized or examined. Instead, the thumb drive contains data from the MacBook laptop (voucher #1) and Dell Precision Tower 3620 (voucher #7). As the MacBook laptop (voucher #1) is the personal property of Defendant Bullock, the government has provided the Durham Police Department evidence unit with a letter consenting to its release to Defendant Bullock and

11

has informed defense counsel that Bullock can make arrangements with the Durham Police Department to take custody of it.

This the 2nd day of August, 2018.

Respectfully submitted,

MATTHEW G.T. MARTIN
United States Attorney

/S/ FRANK J. CHUT, JR.
Assistant United States Attorney
NCSB # 17696
United States Attorney's Office
Middle District of North Carolina
101 S. Edgeworth Street
Greensboro, NC 27401
Phone: 336/333-5351

/S/ K.P. KENNEDY GATES
Special Assistant United States Attorney
NCSB # 41259
United States Attorney's Office
Middle District of North Carolina
101 S. Edgeworth Street
Greensboro, NC 27401
Phone: 336/333-5351

12

CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2018, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Paul Moore Dubbeling, Esq.

Respectfully submitted,

MATTHEW G.T. MARTIN
UNITED STATES ATTORNEY


/S/ FRANK J. CHUT, JR.
Assistant United States Attorney
NCSB # 17696
United States Attorney's Office
Middle District of North Carolina
101 S. Edgeworth Street
Greensboro, NC 27401
Phone: 336/333-5351