DOB: 02/09/1967     CR: 17A018     AGENCY: JCDA

**COUNTY COURT, JEFFERSON COUNTY, STATE OF COLORADO**

COURT ADDRESS: 100 JEFFERSON COUNTY PARKWAY

**STATE OF COLORADO**

PAULA KAY BULLOCK
DEFENDANT

CASE NUMBER: 16SA04625
DIVISION:

## WARRANT FOR ARREST

You are hereby commanded to arrest the above named individual and bring that person without unnecessary delay before the County Court in and for the County of Jefferson, Colorado, it appearing from an affidavit sworn to before me relating facts sufficient to establish probable cause that the offense(es) of:

18-18-415(1)(a)                    Control Sub -Obtain by Fraud (DF4)


Bond Fixed at _____     Date _____

_____
County Court Judge

Attachment to Order 2017CR1197

| DISTRICT COURT, JEFFERSON COUNTY, COLORADO | |
|---|---|
| Court Address: | |
| 100 Jefferson County Parkway, Golden, CO, 80401-6002 | DATE FILED: May 30, 2017 10:47 AM |
| The People of the State of Colorado | CASE NUMBER: 2017CR1197 |
| v. | |
| PAULA KAY BULLOCK | |
| | ⚠ COURT USE ONLY ⚠ |
| | Case Number: 2017CR1197 |
| | Division: W    Courtroom: |
| **Order: Warrant for Arrest** | |

The motion/proposed order attached hereto: PROBABLE CAUSE FOUND.

Probable cause found within affidavit. Bond set at $5,000 c/s.

Issue Date: 5/30/2017

*[signature: Jean Woodford]*

JEAN WOODFORD
County Court Judge

COMBINED COURT, JEFFERSON COUNTY / GILPIN COUNTY, COLORADO
FIRST JUDICIAL DISTRICT
STATE OF COLORADO

## AFFIDAVIT FOR ARREST WARRANT

**Investigator Joseph Montoya**, being duly sworn upon oath says:

That the foregoing offense(s) alleged was committed of this affiant's own personal knowledge, and the facts stated therein are true.

Your affiant is of lawful age and a sworn peace officer of the First Judicial District Attorney's Office, Golden, Colorado, in the Counties of Jefferson and Gilpin.

Your affiant states that the following facts are true and based upon his/her personal knowledge, as a result of his/her conversations with the person(s) named herein and reviewing their written reports.

On 03/30/2017, your affiant was assigned to follow up on the following Arvada Police case, 2016-2516. The following information was documented by Officer Ian Hetrick with the Arvada Police Department during the course of his investigation:

On 02/18/16, at approximately 1450 hours, Officer Hetrick was dispatched to 6395 Sheridan Blvd. at Walgreens reference a forgery.

Upon arriving, Officer Hetrick contacted the reporting party identified as Kimberly Sandquist DOB: 04/11/1965. Kimberly is a pharmacist at Walgreens. Kimberly said on 02/16/16 a female identified as **Paula Bullock DOB: 02/09/67** came through the drive through with a written prescription. Kimberly informed Officer Hetrick that Paula is a veterinarian with the Hermosa Veterinarian Clinic located at 5495 Federal Blvd. Denver.

**Paula** presented a written prescription using a Hermosa Veterinarian Clinic prescription pad. The prescription was dated 2/15/16 and was for Max Sigala (unknown DOB) 1251 Yuba St. Aurora 80011. The prescription is for Max's dog "Bear Bear", a 5 year old 74lb Sharpei. The prescription was for "Oxycodone120ct, 10mg." The DEA # on the prescription is BB4259188.

Kimberly informed Officer Hetrick that **Paula** had come to pick up the prescription that she wrote. Kimberly said this is unusual and veterinarians and doctors don't usually pick up controlled substance prescriptions for their patients. When asked what else **Paula** said, Kimberly then told Officer Hetrick that she was not the pharmacist that helped **Paula**. A pharmacist by the name of Lauren Ogden DOB: 06/09/93. Kimberly then said that the prescription was filled and **Paula** left.

Kimberly was contacted by the Hermosa Veterinarian Clinic and spoke with Amber Richard DOB: 04/20/79 who is the manager of the clinic. Kimberly asked if Max is a real client. Amber informed her that yes Max is a real client. Kimberly then asked if Max was supposed to get a prescription of 120 Oxycodone for Bear Bear. Amber told her no, Bear Bear was written a prescription for tramadol. There was no prescription for Oxycodone for Bear Bear. Kimberly informed Amber that **Paula** wrote the prescription and then picked it up. Amber then said that their veterinarians do not pick up controlled substance prescriptions for clients. Amber told Kimberly that was a fraudulent prescription.

Kimberly then told Officer Hetrick that Lauren came back to the Pharmacy on 02/18/16 **Paula** came back through the drive through and tried to return the prescription. Officer Hetrick asked Kimberly if she spoke with **Paula** when she tried to return the prescription and she said no. She said another employee spoke with her.

Page 1 of 4

Officer Hetrick then spoke with another Walgreens Pharmacy employee identified as Lauren Ogden DOB: 06/09/93. Lauren said she was the employee who initially spoke with **Paula**. Lauren said that **Paula** came through the drive through in a dark colored SUV. **Paula** dropped off the prescription and was asked to come back later to pick it up. **Paula** returned in the same SUV. **Paula** asked if the prescription for Max was ready. When **Paula** told her that it was not ready Paula got angry. Lauren said she thought **Paula** said something about the Vet closing but was not sure. **Paula** came back approximately 20 minutes later and picked up the prescription. Lauren then said that **Paula** came back on 02/18/16 through the drive through. Lauren said **Paula** was driving a dark SUV when she came through the drive through. Lauren was driving the vehicle and when she pulled up to the window she tried to give the prescription of Oxycodone back. Lauren said that no, Walgreens does not accept prescriptions back. **Paula** then left the drive through. Officer Hetrick had the photocopied ID that Walgreens gave him. Officer Hetrick asked Lauren if the female who dropped off the prescription matched the ID. Lauren looked at it and said "yes."

Officer Hetrick then tried to retrieve video footage of **Paula** coming through the drive through. Officer Hetrick was informed by Walgreens that there are no video cameras outside that film the drive through.

Officer Hetrick contacted the manager of the Hermosa Veterinarian Clinic, Amber. Amber said her parents own the clinic but she is the manager and is in charge of the day to day operations. Amber informed Officer Hetrick that she received a call from a client, Max, on 02/16/16 stating that he had received a call from Walgreens that a prescription for his dog Bear Bear, for Oxycodone was ready. Amber showed that a prescription for Bear Bear was written and it was for Tramadol. Amber said no prescription for Oxycodone was authorized.

Amber said she has spoken with Walgreens and knew that **Paula** wrote the prescription and picked it up. Amber said that veterinarians do no pick up prescriptions, and specifically do not pick up controlled substance prescriptions for clients. Amber said this is never done at their clinic.

Amber then called in **Paula** on 02/17/16 and confronted her about the prescription for 120 Oxycodone that was not authorized. First **Paula** told Amber that someone stole her ID card and her credit card. **Paula** then said that someone must have stolen her DEA #. **Paula** then started to say that she was concerned because the DEA was going to "fine her" for this. Amber said she has been doing this for a long time and the DEA does not fine people if their ID is stolen. Amber told **Paula** that they were going to get the police involved in this investigation. **Paula** then confessed to Amber that her ID and credit card were not stolen. **Paula** further said that she wrote the fake prescription for Bear Bear and picked it up herself. **Paula** again admitted the prescription was falsified.

Amber informed Officer Hetrick that **Paula** has since been "relieved of her duties." Officer Hetrick asked Amber how long **Paula** has worked for the HVC. Amber said **Paula** is a "winter veterinarian" and has worked over the winter for the HVC for two years.

Officer Hetrick next asked Amber if the dog Bear Bear has ever been prescribed Oxycodone before. Amber looked up the records and said yes, Bear Bear was prescribed 60, 5mg Oxycodone tablets on 12/03/15. Officer Hetrick asked Amber if she knew what kind of car **Paula** drove. Amber said she believes **Paula** drives a dark colored Dodge Durango.

On 02/20/16 at approximately 1600 hours, Officer Hetrick spoke with a pharmacist from Walgreens identified as Lisa Wingate DOB: 12/05/1983. Lisa said that she did not have any interaction with **Paula** but was present when **Paula** dropped off the prescription. Lisa said the normal waiting time to fill a prescription that is a controlled substance is approximately 90 minutes. Lisa then informed Officer Hetrick that Tuesday the 16th was busy and she did not get the prescription filled in the 90 minutes and it took her approximately 120 minutes to fill it. Lisa said she received a call on the 17th from the Hermosa Veterinarian Clinic asking if they filled a prescription for Oxycodone. They then wanted to know who dropped off the prescription and who picked up the filled prescription. Lisa said she sent over **Paula's** photocopied ID.

Officer Hetrick was contacted by phone by a male who identified himself as "Richard Tegtmeier" a lawyer that has been retained by **Paula**. Richard advised Officer Hetrick that he was representing **Paula**. Richard then said that he was leaving for San Francisco and would be back on Tuesday 02/23/16. Officer Hetrick told Richard that he would be back to work on

Page 2 of 4

Thursday 02/25/16. Richard asked that Officer Hetrick call him then and they can speak about the case and if **Paula** will participate in an interview.

After several weeks of contact with Richard he finally stated on 03/10/16 that he would be advising his client against participating in an interview. Richard said he and his client would only participate in an interview if it was at the district attorney's office.

On 03/31116 at approximately 1300 hours Officer Hetrick was able to contact Kimberly Sandquist DOB: 04/11165 by phone. Officer Hetrick informed Kimberly that he was told she had some information on this case. Kimberly informed Officer Hetrick that she does not remember the date now but she came in and there was a prescription laying on the counter. Kimberly said this is strange and usually does not happen. This prescription was written by **Paula Bullock**. Kimberly then said she received a phone call shortly after from **Paula** asking if there was a problem with the prescription. Kimberly told her that she did not fill the prescription but she did not think so.

**Paula** then told Kimberly that she wrote the prescription and there was no problem with it. **Paula** then asked Kimberly if she needed her DEA# or her license #. Kimberly said this is strange behavior and they do not have doctors or vets calling offering this type of information. Kimberly stated "this was really odd."

Kimberly said that approximately 15 minutes after her phone conversation with **Paula**, she received a call from the manager of **Paula's** veterinary clinic. Kimberly did not remember the caller's name but said the person identified themselves as the manager of the clinic and said they were calling because the prescription written by **Paula** was a fake. They said **Paula** wrote the prescription for herself.

Kimberly then said she went back to work and later that day a pharmacy technician came to Kimberly and said that **Paula** was in the drive through trying to return the prescription to the pharmacy. Kimberly said no, they would not take the narcotics back as that is against Colorado Law. **Paula** kept the prescription and left the drive through.

After reviewing the case, your affiant determined additional follow up was needed to clarify information obtained by Officer Hetrick.

On 03/30/2017, your affiant contacted Kimberly Sandquist who is still employed by Walgreens pharmacy. Your affiant identified himself as an investigator for the First Judicial District Attorney's Office. Your affiant advised Kimberly he was following up on an incident that occurred on or about 02/16/2016, with **Paula Bullock**. Kimberly told your affiant she remembers the incident fairly well.

Your affiant asked Kimberly if she recalls a prescription written by **Paula** on the counter. Kimberly stated she observed a prescription written and signed by **Paula** for Oxycodone. Kimberly further stated the prescription was on the counter because another employee had concerns about it. Kimberly received a phone call from **Paula** asking if there was a problem with the prescription. Kimberly thought the phone call from **Paula** was odd. Kimberly told **Paula** she was not the person who filled the prescription. Kimberly could not provide your affiant with an approximate time/date of her interaction with **Paula** via telephone. Kimberly did not have any additional information to provide.

On 04/20/2017 at approximately 1100 hrs. your affiant contacted Max Sigala via telephone. Max is the owner of Bear Bear, (Shar pei) who the 120 ct. Oxycodone was prescribed to. Your affiant identified himself as an investigator for the First Judicial District Attorney's Office. Your affiant advised Max he was following up on an incident that occurred on or about 02/16/2016, with **Paula Bullock**. Max told your affiant he knew exactly what I was talking about.

Max told your affiant he was a longtime customer of Hermosa Clinic. Bear Bear, who is owned by Max, has been under the care of Dr. Walter Kurth. Max stated he received a text message from Walgreens pharmacy notifying him of an Oxycodone prescription for Bear Bear that was ready for pickup. Max thought it was odd because he usually fills the prescriptions for Bear Bear at King Soopers on 6th and Peoria because he lives in Aurora, CO. Max further stated he was not expecting an Oxycodone prescription for Bear Bear because he already had a supply, and was trying to reduce Bear Bear off of it. Bear Bear was, and still is on medication for Lupus, and was prescribed Oxycodone for pain Bear Bear was having. Max stated

he's never been a fan of giving Oxycodone to Bear Bear, and would only give it as needed. Max further stated that's why he still had quite a bit and didn't know why he would have been prescribed more. Max stated he doesn't have any prescriptions under his name, and is not a fan of Oxycodone himself.

After receiving the message from Walgreens, Max couldn't remember if he called, or went to the clinic where he spoke to Amber who is a daughter of Dr. Kurth. Amber confirmed that Bear Bear was not to receive a prescription for Oxycodone. Max was advised by Amber that they would pull the file for Bear Bear and secure it in another office.

Your affiant asked Max if he's ever seen Dr. **Paula Bullock** when he took Bear Bear to Hermosa Clinic. Max said he did not know who Dr. Bullock was, and would only see "Dr. K". Your affiant confirmed with Max that "Dr. K" was Walter Kurth.

Max stated he has an account with Walgreens that would allow him to receive text messages when a prescription was available for pickup. Max believes because he does not know Dr. Bullock, she was unaware that he would be notified of the Oxycodone prescription being dropped off and filled.

Max did not have any additional information to provide you affiant at this time.

Based upon the foregoing facts, your affiant submits that there is probable cause to believe that criminal offenses have been committed in violation of Colorado law. Your affiant further submits that there is probable cause to charge **Paula Kay Bullock, DOB: 02/09/1967, 5'10" in height, 150 lbs., Brown hair, Brown eyes**, with the commission of these offenses. Your affiant therefore requests that a warrant be issued for the arrest of **Paula Kay Bullock**, and that a bail bond amount be set.

_____
Affiant

Subscribed and sworn to before me.

Dated _May 17, 2017_

_____
Notary Public

Expiration Date: _Oct. 8, 2019_

PATRICIA A JOBE
NOTARY PUBLIC
STATE OF COLORADO
Notary ID 19954014887
My Commission Expires 10/08/2019

Page 4 of 4