IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | 1:17CR460-1 |
| PAULA KAY BULLOCK | : | |

FACTUAL BASIS

NOW COMES the United States of America, by and through Matthew G.T. Martin, United States Attorney for the Middle District of North Carolina, and states the following as a factual basis under Rule 11 of the Federal Rules of Criminal Procedure:

*Background information*

During November of 2016, an individual whose initials are L.A. had her dog, Romeo, treated at Affordable Animal Care ("AAC") in Durham, North Carolina. Defendant Paula Kay Bullock was the owner of and practicing veterinarian at AAC. L.A.'s dog needed surgery and follow up care. At the time, L.A. had been working as a housekeeper for an individual whose initials are J.F. They had known each other for approximately ten years. J.F. agreed to pay for Romeo's veterinary services at AAC.

J.F. provided AAC with her American Express credit card account number ending in 33008 to pay for Romeo's medical care. J.F. only agreed to

pay for Romeo's surgery and related follow-up care. No charges should have been made to J.F.'s credit card after November of 2016. L.A. indicated that she had Romeo treated twice during November 2016 and housed at AAC several times prior to November 2016, but Romeo did not have any treatments or services provided by AAC after November of 2016.

From December of 2016 through April of 2017, AAC charged J.F.'s American Express credit card without her permission for care and services that were never provided. J.F. was unaware that AAC was continuing to charge her account after November 2016 since she had automatic payments coming from her Wells Fargo Bank, N.A., checking account to the American Express credit card account. In addition, J.F. had been out of the country dealing with a personal emergency during much of this time. J.F. only noted the discrepancy after the value of her Wells Fargo Bank, N.A., account dropped and she discovered the continued charges from AAC made on her American Express credit card account. J.F. questioned L.A. about the additional charges and L.A. stated she only used J.F.'s American Express credit card during November 2016 for treatments for Romeo and provided statements received from AAC documenting services.

J.F. also discovered that three unauthorized charges to Patterson Veterinary Supply, Inc. ("PVS") were made with her American Express credit card. The payments were made on a PVS credit account that was opened in

2

the name of Defendant Bullock and an individual whose initials are J.C.  J.C. indicated that a credit application for PVS was fraudulently opened in her name while she worked as a Traveling Veterinarian at AAC.  J.C. indicated that the signature on the credit application was forged.  She directed investigators to the signature section on the credit application, explaining that her first name was misspelled several times.  In addition, she recognized Defendant Bullock's signature on the application.  She recognized her signature from paychecks she received while working for Defendant Bullock.

The charges made on J.F.'s American Express credit card to Defendant Bullock's PVS account totaled $2,000.00.  An additional 27 unauthorized charges were made to J.F.'s credit card by AAC.  Those charges totaled $32,359.68.  The total loss from all unauthorized transactions involving J.F. was $34,359.68.  This restitution has been repaid by Defendant Bullock and as a result there is no restitution due and owing to J.F.

Two of Defendant Bullock's employees, C.G. and H.L. were interviewed separately regarding their employment at AAC.  C.G. indicated that she was an Office Manager at AAC from August 2016 through February of 2017. While working at AAC, she was instructed to make copies of the front and back of customers' credit cards by Defendant Bullock and to place those copies into patient files.  Defendant Bullock also called C.G. on several occasions and instructed her to manually enter credit cards into the merchant processor

3

machine. C.G. was further instructed by Defendant Bullock that if a card failed to accept charges, to change the amount charged incrementally lower until the charge was accepted. Once it was accepted, Defendant Bullock told C.G. to immediately reverse the charge. C.G. stated that several calls started to come in on a daily basis from clients around December of 2016. They were complaining of charges made to their accounts for services never provided by AAC. When C.G. would attempt to reverse the charges, she was instructed by Defendant Bullock to never reverse a charge unless told to do so by Defendant Bullock.

C.G. was asked about the treatment of L.A.'s dog, Romeo. C.G. remembered Romeo and L.A. She indicated that she remembered that J.F. paid for Romeo's surgery in November of 2016. C.G. also indicated that Romeo received no services from AAC after November 2016. C.G. left AAC in February of 2017 because she did not feel comfortable with many of Defendant Bullock's practices.

H.L. was also an office manager at AAC. She indicated that she remembered Romeo and L.A.. She stated that no charges should have been made for Romeo's treatment or services after November 2016.

H.L. also stated that she and other AAC staff were instructed to keep front and back copies of credit cards and to place them in patient files. H.L. explained that this was common practice at AAC and that customers would

4

call on a daily basis complaining about inaccurate charges and additional charges made to their credit card accounts. H.L. explained that Defendant Bullock would regularly take office invoices and manually add payments into the merchant processor even after being informed by H.L. that the payments had already been made by the clients. H.L. knew that the payments had already been made because it was part of her daily duties.

H.L. also received a call from Defendant Bullock instructing her to manually enter several credit cards for services already approved and to immediately reverse the charge once the payment was accepted. H.L. believed this to be strange, but did not question Defendant Bullock for fear of being terminated.

A search warrant of AAC was conducted by the Durham Police Department ("DPD") on May 23, 2017. During the search, DPD discovered several financial documents which reflected Defendant Bullock's fraudulent use of victim credit cards through an onsite credit card processor. Credit applications were also located which Defendant Bullock used to establish fraudulent credit lines in victim names. DPD was able to match up fraudulent purchases through documents located during the search warrant and financial statements returned by victim and subject bank accounts.

*Counts Seven and Twenty-two*

After the return of the original indictment, evidence has arisen of additional criminal activity by Defendant Bullock when investigators discovered that Defendant Bullock had sold AAC and a new veterinarian was operating the practice. The new owner has provided the government with the electronic controlled substances log. Defendant Bullock maintained this log pursuant to DEA regulations and a Memorandum Agreement between herself as owner of AAC and the DEA by which she agreed to maintain complete and accurate controlled substances after a DEA audit in 2015 found that Defendant Bullock could not account for ninety percent of the Tramadol Pills in her inventory. Interview of an employee of Defendant Bullock revealed that Defendant Bullock made entries in this controlled substances log personally. In fact, employee L.B. informed investigators that she refused to make entries in the log, as she knew it contained inaccurate entries. In particular, she knew that Defendant Bullock had logged in disbursement of controlled substances to dogs that in fact had not received the disbursements allowing Defendant Bullock to falsely account for controlled substances to the DEA.

Review of the controlled substance log revealed that a series of fraudulent entries were made by Defendant Bullock as to two dogs owned by a L.D. L.D. also was a victim of financial fraud by Defendant Bullock, who made unauthorized charges on L.D.'s Bank of America, N.A., debit card account after

her dogs were neutered by Defendant Bullock. This conduct is charged in Count Seven of the indictment, in violation 18 U.S.C. § 1029(a)(2). L.D.'s dogs were never treated by Defendant Bullock again. However, Defendant Bullock recorded both dogs receiving shots of Ketamine on multiple occasions weeks after their only visit to AAC. These false entries are in violation of Count Twenty-two, making false entries in violation of 18 U.S.C. § 1001(a)(3).

The charges made on L.D.'s Bank of America, N.A., debit card account by Defendant Bullock totaled $1,630.86. This restitution has been repaid by Defendant Bullock and as a result there is no restitution due and owing to L.D.

This the 5th day of February, 2019.

                                                MATTHEW G.T. MARTIN
                                                United States Attorney

                                                /S/ FRANK J. CHUT, JR.
                                                Assistant United States Attorney
                                                NCSB # 17696
                                                United States Attorney's Office
                                                Middle District of North Carolina
                                                101 S. Edgeworth St., 4th Floor
                                                Greensboro, NC  27401
                                                Phone:  336/333-5351

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 1:17CR460-1 |
| | : | |
| PAULA KAY BULLOCK | : | |

I hereby certify that on February 5, 2019, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Paul Moore Dubbeling, Esquire

        Respectfully submitted,

        MATTHEW G.T. MARTIN
        United States Attorney


        /S/ CLIFTON T. BARRETT
        Assistant United States Attorney
        NCSB #12858
        United States Attorney's Office
        Middle District of North Carolina
        101 S. Edgeworth St., Fourth Floor
        Greensboro, NC  27401
        e-mail: cliff.barrett@usdoj.gov
        Phone:  336/333-5351